**HUNTON ANDREWS KURTH LLP**
Ann Marie Mortimer (State Bar No. 169077)
amortimer@HuntonAK.com
Jason J. Kim (State Bar No. 221476)
kimj@HuntonAK.com
Jeff R. R. Nelson (State Bar No. 301546)
jnelson@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

Attorneys for Plaintiffs
FACEBOOK, INC. and INSTAGRAM, LLC

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation, and INSTAGRAM, LLC, a Delaware limited liability company, | CASE NO.:  3:20-cv-08153 |
| Plaintiffs, | **COMPLAINT; DEMAND FOR JURY TRIAL** |
| v. | |
| ENSAR SAHINTURK, | |
| Defendant. | |

Plaintiffs Facebook, Inc. ("Facebook") and Instagram, LLC ("Instagram") allege the following:

## INTRODUCTION

1.    Since at least August 2017, Defendant Ensar Sahinturk created and maintained a network of "clone" Instagram websites and web viewers (the "clone sites"), which displayed Instagram users' public profiles without their knowledge or consent.   Defendant "scraped" or improperly collected the Instagram users' publicly viewable profiles, including photos, videos, and profile information, using unauthorized automation software.   Defendant's automation software evaded Instagram's technical restrictions by falsely identifying itself as a legitimate Instagram user's Android device connected to the official Instagram mobile application ("Official IG App").   Through this fraudulent connection, Defendant scraped publicly available data from over 100,000 Instagram users and republished it to the clone sites.

2.    Defendant's conduct was not authorized by Facebook or Instagram.   Since May 2019, Facebook and Instagram have taken technical and legal enforcement actions against Defendant, including disabling accounts and sending cease and desist letters. Facebook and Instagram bring this action to stop Defendant's continued and future misuse of their platform in violation of Instagram's Terms of Use ("TOU").   Facebook and Instagram also bring this action to obtain compensatory and punitive damages pursuant to the Lanham Act, 15 U.S.C. § 1125 (c) and (d).

## PARTIES

3.    Plaintiff Facebook, Inc., is a Delaware corporation with its principal place of business in Menlo Park, California.

4.    Plaintiff Instagram is a Delaware limited liability company with its principal place of business in Menlo Park, California.   Instagram is a subsidiary of Facebook.

5.    Defendant Ensar Sahinturk is a resident of Istanbul, Turkey.   According to LinkedIn, Defendant is a software developer and operates various Turkish companies,

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

which purport to provide services related to "corporate intelligence" and "software solutions." Ex. 1. Since at least March 2020, Defendant controlled at least twenty clone websites displaying data from Instagram, including jolygram.com, pikdo.net, and finalgram.com.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the federal causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over the state law causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1367 because these claims arise out of the same nucleus of operative facts as Facebook and Instagram's federal claims.

8.      In addition, the Court has jurisdiction over all the causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1332 because complete diversity exists between the Plaintiff and the Defendant, and because the amount in controversy exceeds $75,000.

9.      The Court has personal jurisdiction over Defendant because Defendant has created multiple Instagram accounts and thereby agreed to Instagram's TOU. Instagram's TOU require Defendant to submit to the personal jurisdiction of this Court for litigating any claim, cause of action, or dispute with Instagram.

10.     In addition, the Court has personal jurisdiction because Defendant knowingly directed and targeted his actions at Facebook, which has its principal place of business in California. Defendant's business depends on accessing and scraping Instagram. Defendant has transacted business and engaged in commerce in California by, among other things, using a hosting provider and servers in San Francisco to host at least five of his clone sites. Facebook's claims arise directly from these California contacts. Defendant generated revenue from his clone sites by running ads using an ad publishing service hosted by Google.

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), as the threatened and actual harm to Facebook occurred in this District. Venue is also

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

proper with respect to Defendant pursuant to 28 U.S.C. §1391(c)(3) because he does not reside in the United States.

12.     Pursuant to Civil L.R. 3-2(c), this case may be assigned to either the San Francisco or Oakland division because Facebook is located in San Mateo County.

## FACTUAL ALLEGATIONS

### A.     Background on Facebook and Instagram

13.     Facebook offers a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.

14.     Instagram is a photo and video sharing service, mobile application, and social network.  Instagram users can post photos and videos to their profile.  They can also view, comment on, and like posts shared by others on Instagram.  The Instagram service is a Facebook product.

15.     When an Instagram user posts a photo, other Instagram users can view the photo and choose to "like" or "comment" on it.  For private accounts, approved followers of the account can see the post. For public accounts, anyone can see the post. When a photo is liked, that like can be seen by anyone who can see the post.

16.     Instagram users can also tag their photos with hashtags—words or phrases preceded by a number or hash sign (#)—that indicate that the post is about a specific topic.  Other users can then search for hashtags to find content related to various topics.

17.     Instagram also enables users to post Stories—photos or videos that can include audio and augmented reality affects.  Stories are only visible to other users for 24 hours after they are posted, unless the user specifically makes them available for longer by adding them as a Story Highlight.  The user who posts a Story can see a list of every user who has viewed their Story.

18.     Instagram users can gain followers, views, and likes, but only from other registered Instagram users.  If a visitor to Instagram does not have an Instagram account and tries to like a post, the visitor is redirected to the Instagram login page to enter their

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Instagram credentials or to create a new Instagram account.  In addition, if a visitor to Instagram has not logged in, they will be able to see only a limited number of posts before being redirected to an Instagram login page.  Only users who have logged in can view Stories.

19.    Instagram can be viewed using the Official IG App or at its website, www.instagram.com.  The Official IG App is a mobile application designed by Facebook that users can download onto their mobile phone.  Communications made by authenticated Instagram users, using the Official IG App, are sent to Facebook computers, which will then return information to allow a user to experience the Instagram service on the Official IG App.

**B.    Instagram's Terms of Use**

20.    Everyone who creates an Instagram account agrees to Instagram's TOU[1] and other rules that govern access to and use of Instagram, including Instagram's Community Guidelines.[2]  Instagram's TOU state that because Instagram is a Facebook product, the TOU constitute an agreement between the Instagram users and Facebook.[3]

21.    Since at least April 2018, Instagram's TOU prohibit users from (a) "do[ing] anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose;" (b) "[I]nterfering or impairing the intended operation of [Instagram];" and (c) "creating accounts or collecting information in an automated way."

22.    In addition, Instagram's TOU require users to "use [Instagram's] intellectual property and trademarks or similar marks," only "as expressly permitted by [Instagram's] Brand Guidelines[ ] or with [] prior written permission."  The Brand Guidelines prohibit using the marks in a way that "[m]akes the Instagram brand the

---

[1] Instagram's TOU can be found at https://help.instagram.com/581066165581870.
[2] Instagram Community Guidelines can be found at https://help.instagram.com/477434105621119.
[3] *See* https://help.instagram.com/581066165581870.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

most distinctive or prominent feature," "[i]mplies partnership, sponsorship or endorsement," or "combine[s] 'Insta' or 'gram' with [the user's] own brand."

## C. Defendant Diluted Instagram's Registered Trademarks

23. Instagram owns the exclusive rights to the highly distinctive INSTAGRAM word mark, having used the mark in connection with its goods and services as early as 2010.

24. In addition to its extensive common law rights, Instagram owns numerous United States registrations for the INSTAGRAM word mark, including, but not limited to:

a) United States Registration Number 4,822,600;

b) United States Registration Number 4,146,057;

c) United States Registration Number 4,756,754;

d) United States Registration Number 4,863,595;

e) United States Registration Number 4,863,594;

f) United States Registration Number 5,566,030;

g) United States Registration Number 4,170,675; and

h) United States Registration Number 4,827,509.

25. Copies of these registration certificates are attached to this complaint as Exhibit. 2. Instagram's common law and registered trademark rights are collectively referred to as the "Instagram Trademarks."

26. Beginning in or around November 2019, Plaintiffs learned that Defendant controlled a network of domains with names similar to Instagram. Specifically, jolygram.com, imggram.com, imggram.net, finalgram.com, and ingram.ws (collectively, the "Domain Names"). Ex. 3. On August 18, 2017, Defendant registered jolygram.com in his name, which has been in use since at least August 2017. On August 11, 2017, Defendant registered imggram.com in his name, which has been in use since at least August 2017. On September 20, 2018, Defendant registered imggram.net in his name, which has been in used since at least October 2018. On October 5, 2019, the

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

domain name <u>finalgram.com</u> was registered through a domain registration service that provides anonymity.  On information and belief, Defendant registered <u>finalgram.com</u>, which has been in use since at least October 2019.  On July 17, 2019, the domain name <u>ingram.ws</u> was registered through a service that provides anonymity.  On information and belief, Defendant registered <u>ingram.ws</u>, which has been in use since at least September 2019.  The use of these domain names dilutes the Instagram Trademarks.

27.    Instagram's use of the Instagram Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive.  Instagram has made, and continues to make, a substantial investment of time and effort in the promotion of Instagram and the Instagram Trademarks.  Through Instagram's widespread use of the Instagram Trademarks, extensive and continuous media coverage, the high degree of consumer recognition of the Instagram Trademarks, Instagram's enormous and loyal user base, its multiple trademark registrations and pending applications, and other factors, the Instagram Trademarks are highly distinctive and enjoy widespread recognition among consumers pre-dating Defendant's use of the dilutive "Jolygram," "Imggram," "Finalgram," and "Ingram."

28.    As a result of Instagram's efforts and use, the Instagram Trademarks are famous within the meaning of Section 43 (a) of the Lanham Act, 15 U.S.C. § 1125(c), as they are recognized within the United States and around the world as signifying high quality, authentic goods and services provided by Instagram.

29.    Since at least August 2017, Defendant has diluted the Instagram Trademarks by referring to his services as "Jolygram," "Imggram," "Finalgram," and "Ingram" and listing copyrights for these names on his websites.  Ex. 4.

### D.    Background on Scraping

30.     Scraping is a form of data collection that relies on unauthorized automation for the purpose of extracting data from a website or app.  "Mobile scraping" is a type of data scraping in which the scraper  uses specialized software in order to pretend to be a human, instead of a bot, using an authorized Android or iPhone device

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

connecting to computers through an official app.  Through this fraudulent mobile connection, mobile scrapers deliver automated requests for data.

31.     Automation tools and software are necessary for mobile scraping. Instagram employs a number of measures to detect and disrupt unauthorized automated requests on its systems.  These include the technical restrictions designed to identify whether communications originate from the Official IG App.  Instagram also uses automated monitoring of use patterns to determine whether they are consistent with a human user, CAPTCHAs, and disabling of accounts determined to be engaged in automated activity.

### E.     Defendant's Scraping and Creation of Instagram Clone Sites

32.     In order to display Instagram user profiles on his clone sites, Defendant used automation software (the "Scraping Software") and thousands of Instagram accounts to improperly obtain data from publicly available Instagram accounts.

33.     Defendant evaded Instagram security measures to access the Restricted Endpoints which were authorized for access only by the Official IG App.  Specifically, Defendant used the Scraping Software to: 1) falsely identify requests to Facebook's servers as coming from a mobile phone and 2) digitally sign requests in a manner that falsely identified them to Facebook's servers as originating from a human using the Official IG App.

34.     Defendant programmed the Scraping Software to use thousands of Instagram accounts to mimic legitimate users of the Official IG App so they could make automated requests for Instagram user data.  After the Scraping Software made these automated requests to Facebook servers, it was programmed to republish Instagram user data on Defendant's clone sites.

35.     Since at least August 2017, Defendant displayed this Instagram user data on a network of at least twenty clone sites, including jolygram.com, imggram.com, imggram.net, finalgram.com, ingram.ws, and pikdo.net,     Exs. 4-5.  These websites allowed their users to view and search Instagram profiles without agreeing to

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Instagram's TOU or any user authentication on Instagram.  On Defendant's clone sites, anyone could enter an Instagram username to view an Instagram users' public profiles, pictures, videos, Stories, hashtags, and location.   The clone site users could also download pictures and videos posted on Instagram—a function not available in the Official IG App or Instagram website—using a "save" button on the sites.   In addition, the clone site allows users to anonymously view Instagram Stories with no notification to the Instagram user who posted them.  Defendant generated revenue by displaying ads to the users of the clone sites.

36.     Defendant's Scraping Software used thousands of accounts to scrape.  For example, on April 14, 2020 alone, Defendant used over 7,700 accounts to make automated requests to Facebook servers. On April 22, 2020, Defendant used over 9,000 accounts to make automated requests.  The purpose of these automated requests was to gather data to populate content on the clone sites.

**F.     Defendant Agreed to Instagram's Terms**

37.     At all times relevant to this case, Defendant was bound by Instagram's TOU.

38.     Between December 2012 and June 2019, Defendant created and used at least ten Instagram accounts.  These include accounts created on December 25, 2012 and June 5, 2019.

39.     In addition to his personal Instagram accounts, Defendant used approximately 30,000 Instagram accounts in order to scrape data from Instagram.

**G.     Facebook's Past Enforcement Actions against Defendant**

40.     Since 2019, to protect Instagram users and the Instagram service, Facebook has taken multiple enforcement actions against Defendant for violating Instagram's TOU and Policies, including sending multiple cease and desist letters to Defendant and disabling approximately 30,000 Instagram accounts associated with Defendant.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### 1.   May 29, 2019 Cease and Desist

41.   On May 29, 2019, Facebook sent Defendant a cease and desist letter in connection with his unauthorized clone site, jolygram.com. Ex. 6.   At that time, Facebook disabled one Facebook account, two Instagram accounts, and one Facebook page belonging to Defendant.

42.   The May 2019 cease and desist letter informed Defendant that Facebook revoked his access to use and access Facebook and Instagram services. *Id.*

43.   In response to the May 2019 cease and desist letter, Defendant indicated that he did not operate jolygram.com, but that the domain was registered under his name. Defendant also indicated that he had "shut down the domain."

44.   Approximately two months later, the website jolygram.com was operational again.   On July 12, 2019, Facebook sent follow up correspondence to Defendant, reminding him that his access to the Facebook service and Instagram had been revoked and that the unauthorized clone site was in violation of Instagram's TOU.

### 2.   September 19, 2019 Cease and Desist

45.   Despite having his access revoked, Defendant continued to access Instagram by creating additional user accounts.

46.   On September 19, 2019, Facebook sent a second cease and desist letter relating to pikdo.net. In the same letter, Facebook noted that jolygram.com was back in operation and demanded that Defendant cease operating jolygram.com.   Facebook again demanded that Defendant stop abusing Instagram and stop violating Instagram's TOU. Facebook disabled Defendant's five remaining Facebook accounts.   Defendant did not respond.

47.   Between Facebook April 9 and May 17, 2020, Facebook identified and disabled over 30,000 Instagram accounts associated with finalgram.com, jolygram.com, and pikdo.net.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**H.    Defendant Unjustly Enriched Himself and Harmed Facebook**

48.    Defendant's violations of Facebook and Instagram's TOU and Policies have harmed Facebook. Defendant interfered and continued to interfere with Facebook and Instagram's platforms.

49.    Facebook suffered damages attributable to the efforts and resources it used to investigate and remediate Defendant's conduct in an amount to be determined at trial, and in excess of $25,000.

50.    Since at least May 2019, Defendant has unjustly enriched themselves at Facebook's expense in an amount to be determined at trial. Facebook is entitled to an accounting by Defendant and a disgorgement of all unlawful profits gained from his conduct.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

51.    Plaintiffs reallege and incorporate all preceding paragraphs here.

52.    Since December 2012, Defendant created multiple Instagram accounts and agreed to Instagram's TOU. He agreed to Instagram's TOU for the first time on January 19, 2013, and has explicitly consented to the TOU again most recently on June 5, 2019. In addition, since at least 2019, Defendant has used thousands of Instagram accounts to provide his services.

53.    Plaintiffs have performed all conditions, covenants, and promises required of them in accordance with Instagram's TOU.

54.    Defendant's actions interfered and caused others to interfere with Instagram, and engaged with Instagram in unauthorized ways.

55.    Defendant has breached and continues to breach Instagram's TOU. Instagram's TOU prohibited users from (a) "do[ing] anything unlawful, misleading, or fraudulent or for an illegal or unauthorized purpose;" (b) "[I]nterfering or impairing the intended operation of [Instagram];" and (c) "creating accounts or collecting information in an automated way without [Instagram's] express permission."

56.     Defendant has caused Plaintiffs to incur damages in excess of $75,000. Accordingly, Plaintiffs seek damages in an amount to be proven at trial.

57.     Plaintiffs likewise seeks injunctive relief. As a direct result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendant's actions are enjoined.

## SECOND CAUSE OF ACTION

(Cybersquatting on the Instagram Trademarks Under 15 U.S.C. § 1125(d))

58.     Plaintiffs incorporate all preceding paragraphs here.

59.     The Instagram Trademarks were highly distinctive and federally registered at the United States Patent and Trademark Office at the time Defendant registered the Domain Names.

60.     The Instagram Trademarks are and were famous within the meaning of 15 U.S.C. § 1125(c) at the time of the registration of the Domain Names.

61.     The Domain Names are dilutive of the Instagram Trademarks.

62.     Defendant registered, trafficked in, and used the Domain Names with a bad-faith intent to profit from the Instagram Trademarks.

63.     The Domain Names do not consist of the legal name of Defendant, nor do they consist of a name that is otherwise commonly used to identify Defendant.

64.     Defendant has not made any prior use of the Domain Names in connection with the *bona fide* offering of any goods or services.

65.     Defendant has not made any *bona fide* noncommercial or fair use of the Instagram Trademarks on a website accessible at the Domain Names.

66.     Defendant registered and used the Domain Names to capitalize on the Instagram Trademarks and to offer illicit services specifically aimed at Instagram.com for Defendant's commercial gain.  Such registration and use dilutes the distinctive quality of the Instagram Trademarks by tarnishing or lessening the distinctiveness of the Instagram Trademarks.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

67.     Defendant's registration, trafficking, and use of the Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Facebook and Instagram to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

68.     Facebook and Instagram are entitled to recover their costs as well as Defendant's profits, Plaintiffs' actual damages, or statutory damages under 15 U.S.C. § 1117(d), on election by Facebook and Instagram, in an amount of $100,000 per domain name.

69.     This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

(Dilution of the Instagram Trademarks Under 15 U.S.C. § 1125(c))

70.     Plaintiffs incorporate all preceding paragraphs here.

71.     The Instagram Trademarks are famous, as that term is used in 15 U.S.C. § 1125(c), and they were famous before Defendant's use of "Jolygram," "Imggram," "Finalgram," and "Ingram," and variations of the Instagram Trademarks in commerce. This fame is based on, among other things, the inherent distinctiveness and federal registration of each of the Instagram Trademarks, as well as the extensive and exclusive worldwide use, advertising, promotion, and recognition of them.

72.     Defendant's use of "Jolygram," "Imggram," "Finalgram," and "Ingram," and variations thereof, in commerce is likely to cause dilution by blurring, or dilution by tarnishment, of these trademarks.

73.     Defendant's acts constitute dilution by blurring and dilution by tarnishment in violation of 15 U.S.C. § 1125(c), entitling Plaintiffs to relief.

74.     Defendant has unfairly profited from their conduct.

75.     Defendant damaged the goodwill associated with the Instagram Trademarks and will continue to cause irreparable harm.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

COMPLAINT; DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

76. Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendant. Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

77. Because Defendant acted willfully, Plaintiffs are entitled to damages, and those damages should be trebled pursuant to 15 U.S.C. § 1117(a).

78. This is an exceptional case, making Plaintiffs eligible for an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment)

79. Plaintiffs reallege and incorporate all preceding paragraphs here.

80. Defendant's acts as alleged herein constitute unjust enrichment of Defendant at Facebook and Instagram's expense.

81. Defendant accessed and used, without authorization or permission, Facebook's computers, computer system, and computer network, all of which belong to Facebook.

82. Defendant used Facebook's service, platform, and computer network to, among other things, scrape data from Instagram and Facebook.

83. Defendant received a benefit by profiting off of his unauthorized use of Facebook's and Instagram's computers, computer system, and computer network. But for Defendant's wrongful, unauthorized, and intentional use of Facebook and Instagram, he would not have obtained such profits.

84. Defendant's retention of the profits derived from his unauthorized use of Facebook and Instagram's computers, computer system, and computer network would be unjust.

85. Facebook and Instagram seek an accounting and disgorgement of Defendant's ill-gotten profits in an amount to be determined at trial.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs Facebook and Instagram request judgment against Defendant as follows:

1.      That the Court enter judgment against Defendant that Defendant has:

    a.      Breached his contracts with Facebook and Instagram in violation of California law;

    b.      Cybersquatted on the Instagram Trademarks in violation of 15 U.S.C. § 1125(d);

    c.      Diluted the Instagram Trademarks in violation of 15 U.S.C. § 1125(c); and

    d.      Been unjustly enriched at the expense of Facebook and Instagram in violation of California law.

2.      That the Court enter a permanent injunction enjoining and restraining Defendant and his agents, servants, employees, successors, and assigns, and all other persons acting in concert with or conspiracy with him or who are affiliated with him from:

    a.      Accessing or attempting to access Facebook and Instagram's service, platform, and computer systems;

    b.      Creating or maintaining any Facebook or Instagram accounts in violation of Instagram's TOU;

    c.      Engaging in any activity that disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Facebook's computers, computer system, and computer network or the Instagram service; and

    d.      Engaging in any activity, or facilitating others to do the same, that violates Instagram's TOU.

1        3.      That Facebook and Instagram be awarded damages, including, but not

2    limited to, compensatory, statutory, and punitive damages, as permitted by law and in

3    such amounts to be proven at trial.

4        4.      That Facebook and Instagram be awarded its reasonable costs, including

5    reasonable attorneys' fees.

6        5.      That Facebook and Instagram be awarded pre- and post-judgment interest

7    as allowed by law.

8        That the Court grant all such other and further relief as the Court may deem just

9    and proper.

10

11   Dated:  November 19, 2020                **HUNTON ANDREWS KURTH LLP**

12

13                                            By:   ___/s/ Ann Marie Mortimer___

14                                                  Ann Marie Mortimer
                                                    Jason J. Kim
15                                                  Jeff R. R. Nelson
                                              Attorneys for Plaintiffs
16

17                                            FACEBOOK, INC. and
                                              INSTAGRAM, LLC
18                                                  Platform Enforcement and
                                                    Litigation
19                                                  Facebook, Inc.
20                                                  Jessica Romero
                                                    Tyler Smith
21                                                  Olivia Gonzalez
22                                                  Nikkya Williams

23

24

25

26

27

28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

Dated:  November 19, 2020                         **HUNTON ANDREWS KURTH LLP**

By:   ___/s/ Ann Marie Mortimer___
                     Ann Marie Mortimer
                     Jason J. Kim
                     Jeff R. R. Nelson
                 Attorneys for Plaintiffs

                 FACEBOOK, INC. and
                 INSTAGRAM, LLC
                     Platform Enforcement and
                     Litigation
                     Facebook, Inc.
                     Jessica Romero
                     Tyler Smith
                     Olivia Gonzalez
                     Nikkya Williams

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**